By ti-ie Court.
At the January term, 1909, of the court of common pleas of Coshocton county, the grand jury of said county returned against the defendant herein, John J. Murray, the following indictment:
*309 “The jurors of the grand jury of the state of Ohio, within and for the body of the county of Coshocton, impaneled, sworn and charged to inquire of crimes and offenses committed within said county of Coshocton, in the name and by the authority of the state of Ohio, on their oaths do find and present that John J. Murray, late of said county, on the first day of November in the year of our Lord one thousand nine hundred and eight in said county of Coshocton and state of Ohio, and on divers other days and times between that day and the first day of February, A. D. 1909, in said county and state, unlawfully and knowingly did permit to be kept in a certain brick building and erection of his, the said John J. Murray, the same brick building being then and there in the care and possession of him, the said John J. Murray, a bucket-shop, office and place there situate, wherein he, the said John J. Murray, permitted and suffered the buying and selling of stock of divers railroad companies, the names of which are to the grand jurors unknown, and the •buying and selling of wheat, corn, oats and other produce on margins without any intention on the part of the buyer or seller of receiving or paying for the property so bought, or of delivering the property so sold; and wherein he, the said John J. Murray, permitted and suffered the pretended buying and selling of such property on margins; wherein divers persons whose names are to the •grand jurors aforesaid unknown, bought and sold such property, and offered to buy the same, but did not at the time intend to receive the said property so purchased, or to deliver the property *310 so sold; and wherein the said John J. Murray permitted and suffered said divers persons to contract for option to buy and sell at a future time wheat, corn, oats and stocks of such divers railroad companies, wherein such persons intended at the time aforesaid, to-wit: at the time the contract for such option was entered into, to secure not the article contracted for in said option, but the right and privilege of receiving the difference in money between the contract price of such article or commodity as set forth in said option, and for which the option was contracted for, and the future market price of said article or commodity contemplated in said option, and wherein there was no intention upon the part of the buyer or seller of receiving or paying for the article or commodity or of delivering the article or commodity for which such option was bought or sold, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Ohio.
“Joseph L. McDowell,

“Prosecuting Attorney

Said indictment was found and presented under favor of an act of the general assembly passed February 7, 1889 (86 O. L., 12), entitled: “An act to suppress bucket-shops and gambling in stocks, bonds, petroleum, cotton, grain, provisions and other produce,” the whole of which act is now embraced in Sections 6934a-l to 6934a-5, Revised Statutes, inclusive. Section 6934a-1, so far as its provisions are here pertinent, provides: “That it shall be unlawful for any corporation, association, *311 chamber of commerce, board of trade, copartnership or person to keep or cause to be kept within this state any bucket-shop, office or other place wherein is conducted or permitted the pretended buying or selling of the shares of stocks or bonds of any corporation, or petroleum, cotton, grain, provisions or. other produce, either on margins or otherwise, without any intention of receiving and paying for the property so bought, or of delivering the property so sold; or wherein is conducted or permitted the pretended buying or selling of such property on margins, or when the party buying any of such property, or offering to buy the same does not intend áctually to receive the same if purchased, or to deliver the same if sold, and the keeping of all such places and any such pretended buying or selling are hereby prohibited.” Section 6934a-5 enacts and provides that: “Whoever knowingly permits any of the illegal acts aforesaidv in his building, house, or in any outhouse, booth, arbor or any erection of which he has the care or possession, shall be fined not less than five hundred dollars ($500.00) nor more than one thousand dollars ($1,000.00).” On the trial of this case in the court of common pleas the state, to maintain the issues on its part, introduced evidence tending to show that from November 1, 1908, to February 1, 1909, inclusive, the bucket-shop, office or place, which the indictment alleged was permitted by defendant to be kept in the building described in said indictment, was kept and operated by the defendant, John J. Murray himself, and that the prohibited and unlawful business which it was alleged and charged he permitted to be conducted *312 and carried on in said building, to-wit: “the pretended buying and selling of the shares of stock of certain railroad corporations, and the pretended buying and selling of grain and provisions on margins,” etc., was conducted and carried on by the defendant in person. At the conclusion of the state’s evidence the court, on motion of the defendant’s counsel, instructed the jury to return a verdict of not guilty, for the reason, and on the sole ground, as we are informed in the briefs, and by counsel in oral argument, that, it having been shown by the evidence of the state that defendant himself owned and kept the building or place, and in person conducted and carried on therein the unlawful business of the pretended buying and selling of stocks on margins, etc., he, defendant, could not therefore rightfully be convicted under an indictment which charged him only with knowingly permitting such illegal acts in his said building. The fallacy of this position or claim lies in the fact that it necessarily rejects, and ignores the express provisions of the statute and the pertinent allegations of the indictment. ° It will be observed that Section 6934a-1 not only enacts that it shall be unlawful to keep a “bucket-shop,” but said section, in express terms, also prohibits and makes unlawful “the pretended buying or' selling of the shares of stocks or bonds of any corporation * * * either on margins or otherwise, without any intention of receiving and paying for the property so bought, or of delivering the property so sold.” And Section 6934a-5, Revised Statutes, provides that: “Whoever knowingly' permits any 1 of the illegal acts aforesaid in his building,” etc., *313 shall be punished as in said section provided. The unlawful acts mentioned and referred to in Section 6934a-5 embrace and include all and singular the acts that are prohibited and declared to be unlawful by Section 6934a-l. Hence, it having been shown by the evidence in this case that the defendant, John J. Murray, was the owner and keeper of a building and place wherein divers persons, his patrons and customers, were permitted and allowed to make pretended purchases, and pretended sales, of stocks, grain, etc., on margins, such buying and selling being prohibited and unlawful, it would seem to be a perversion of the law and a burlesque upon the due administration of justice to say and hold that because he himself was the keeper of such office or place, and personally participated in and conducted the unlawful transactions, that therefore, in law, he cannot be held to have knowingly permitted such illegal acts. The latter being one of the offenses embraced in the statute, and being the particular offense defined and charged against the defendant in the indictment in this case, and such being the evidence by which said charge was supported, it was error for the court to instruct the jury to return a verdict of not guilty, and the exception of the prosecuting attorney to the action of the court in that behalf will be sustained.
On the trial of this case one Harry Rex, a broker, was called as a witness on behalf of the state and this question was asked him: “I will ask you, sir, if you or your company send or transfer to anyone or to any company in this county any money or its equivalent to be used by *314 John J. Murray for transactions with traders in his building in this city between the days of November 1, 1908, and February 1, 1909?” Thereupon, at the request of counsel, the court fully explained to the witness his privilege and rights touching the matter of his answering said question, after which the witness refused to answer, stating to the court that he based his refusal on the ground that his answer might tend to incriminate him. Whereupon the court without further inquiry or examination of the witness touching his refusal to answer said question, refused to require him to answer the same. This it is claimed was error. It would seem to us to be so apparent, from a consideration of the circumstances of the case and the nature of the interrogatory itself, that an affirmative answer thereto would tend to incriminate the witness by connecting him with said unlawful business, that we think the court did not err in giving final effect to the claim of the witness that his answer to said question would tend to incriminate him. Other interrog'atorie-$ similar in character were propounded to the witness all of which he declined to answer for like reason. The court in each instance refused to compel him to answer, and in this we think there was no error.

The exception to the action of the court in directing a verdict, sustained. The exception to the court’s refusal to require witness to answer certain questions, overruled.

Crew, Spear, Davis, Si-iauck and Price, JJ., concur.